IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **01-K-2531**

**GENERAL COMMITTEE OF ADJUSTMENT GO-245 UNITED TRANSPORTATION UNION,**

  Plaintiff,

v.

**BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, UNITED TRANSPORTATION UNION, BROTHERHOOD OF LOCOMOTIVE ENGINEERS, GENERAL COMMITTEE OF ADJUSTMENT GO-009,**

  Defendants.

---

**ORDER ON PENDING MOTIONS**

Kane, J.

The Railway Labor Act ("RLA" or "Act"), 45 U.S.C. §§ 151–188, governs collective bargaining agreements formed between carriers and railway employees and "provides a comprehensive framework for the resolution of labor disputes in the railroad industry," including distinct resolution processes for different categories of railway labor disputes. *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987). In this action, Plaintiff General Committee of Adjustment GO-245 of the United Transportation Union ("GO-245") alleges Defendants violated the Act by entering into an agreement regarding the manner in which certain employees of Defendant Burlington Northern and Santa Fe Railway Company ("BNSF") at the Kansas City Consolidated Yards may exercise their seniority. As relief therefore, GO-245 requests that I order the parties to present their dispute to the appropriate adjustment board as required by the RLA and, if GO-245 prevails before the adjustment board, that I enforce the adjustment board's decision by declaring the disputed agreement null and void as applied to the

Kansas City Consolidated Yards and by issuing a permanent injunction enjoining Defendants from applying it there.

Defendants have each moved to dismiss this action for lack of jurisdiction and GO-245 has moved for partial summary judgment to compel Defendants GO-009 to participate in the adjustment of this dispute under the RLA. Having carefully considered the parties' arguments, the record and applicable authority, I deny the motions to dismiss and grant GO-245's motion for partial summary judgment.

## I. Background

This action arises from a dispute between Plaintiff GO-245 and Defendants BNSF, the United Transportation Union ("UTU"), UTU General Committee of Adjustment GO-009 ("GO-009") and the Brotherhood of Locomotive Engineers ("BLE"). Defendant UTU is the authorized collective bargaining representative for purposes of the RLA of various crafts or classes of BNSF employees, including brakemen, conductors, foremen and yardmen. UTU has divided responsibility to make and maintain collective bargaining agreements for specific portions of the BNSF's lines to eleven UTU "General Committees." Plaintiff GO-245 and Defendant GO-009 are two of the General Committees to which UTU has delegated authority to represent specified BNSF employees as further described below. Defendant BLE is the authorized collective bargaining representative under the RLA of engineers employed by the BNSF.

The present dispute has its origins in the 1996 merger of the Burlington Northern Railroad ("BN") and the Atchison & Topeka Santa Fe Railway ("ATSF"), which resulted in the creation of Defendant BNSF. As a consequence of the merger, BNSF consolidated the separate yard operations of its two predecessor railroads in Kansas City, Missouri to create the

Consolidated Kansas City Yards. This action required BNSF to negotiate certain changes to the collective bargaining agreements between its predecessor railroads and UTU, which was the collective bargaining representative for both the former BN and ATSF yardmen in Kansas. UTU participated in these negotiations through the GO-245, as the UTU General Committee with jurisdiction to make and maintain agreements for UTU-represented employees who work on certain BNSF lines and yards, including BN's Kansas City yard operations, and GO-009, as the UTU General Committee with jurisdiction to make and maintain agreements for UTU-represented employees who work on portions of the former ATSF, including the former ATSF yard operations in Kansas City.

BNSF and UTU, acting through GO-245 and GO-009, successfully negotiated an Implementing Agreement that provided for the manner in which former BN and ATSF employees would be selected and assigned to the Consolidated Kansas City Yards, and a new collective bargaining agreement, known as the Consolidated Yards Schedule Agreement, governing the rates of pay, rules and working conditions applicable to all former BN and ATSF yardmen at the consolidated Kansas City yards. As relevant here, both Agreements specified the manner in which former BN and ATSF yardmen could exercise their seniority to obtain job assignments in the consolidated yards.

Article 50 of the Consolidated Yards Schedule Agreement further provides in relevant part:

> [W]ith the signing of this Schedule, both the former Santa Fe UTU General Committee of Adjustment (Santa Fe Proper) [GO-009] and the former Burlington Northern UTU General Committee of Adjustment (CB&Q) [GO-245] hold joint jurisdiction in the Consolidated Kansas City Yards and neither may make an agreement, nor a precedent settlement, nor an agreed understanding, *which affects the Consolidated Kansas City Yards without the other General Committee's approval.* Should there be any arbitration of any minor dispute concerning the

3

>interpretation of the agreements relative to the Consolidated Kansas City Yards, under the Railway Labor Act, or under any other arbitration authority, both General Committees must agree to such arbitration.

UTU/GO-009 Mot. to Dismiss, Ex. 3 at 83 (emphasis added).

On January 1, 2001, defendant BNSF entered into the "Flow-Back Agreement" with Defendant BLE, representing engine-service employees, and GO-009 and two other UTU General Committees, acting on behalf of ground-service employees on the former ATSF lines, that governed the manner in which BNSF engineers can flow back to ground-service positions. The Flow-Back Agreement, among other things, modified existing agreements on the manner in which BLE-represented engineers can exercise their seniority to yard and other ground service positions on portions of the BNSF previously operated by the ATSF. UTU Assistant Paul C. Thompson assisted GO-009 and the other two UTU General Committees in negotiating this agreement.

GO-245 was neither informed of nor included in the negotiations that resulted in entry of the Flow-Back Agreement. When it received a copy of the agreement in March 2001, GO-245 immediately objected to it on the ground that it "affects" the manner in which seniority is exercised at the Consolidated Kansas City Yards and thus required GO-245's approval pursuant to Article 50 of the Consolidated Yards Schedule Agreement. BNSF and GO-009 disagreed that Article 50 and its prior approval requirement was triggered by the Flow-Back Agreement.

After meeting with GO-009, BNSF and BLE in an unsuccessful attempt to resolve their dispute, GO-245 petitioned UTU to find that GO-009 had violated the UTU Constitution by entering into the Flow-Back Agreement without obtaining GO-245's approval to its application to the Consolidated Kansas City Yards. When this petition was unsuccessful, GO-245 requested that GO-009 agree to submit to the appropriate RLA adjustment board the question of whether

4

application of the Flow-Back Agreement to the Consolidated Kansas City Yards without GO-245's approval violated Article 50 of the Schedule Agreement. GO-009 refused.

GO-245 responded by filing this action against GO-009, UTU, BNSF and BLE alleging that BNSF violated the Railway Labor Act by entering into the Flow-Back Agreement and changing the rules and working conditions for BNSF employees represented by GO-245 without first obtaining GO-245's approval as required by Article 50 of the Schedule Agreement. This claim is premised on GO-245's contention that the Flow-Back Agreement "affects" the Consolidated Kansas City Yards within the meaning of Article 50's prior approval requirement because it grants BNSF engineers new and expanded seniority rights that adversely affect the seniority rights and work opportunities of the former BN yardmen at the consolidated yards who are represented by GO-245. GO-245 further maintains that the question of Article 50's meaning and application in this instance is a "minor dispute" committed by the RLA to the exclusive jurisdiction of an RLA adjustment board and asserts that GO-009's refusal to participate in such proceedings itself violates the RLA.

The Defendants have each moved to dismiss GO-245's complaint on the common ground that its claims assert a "representational dispute" that the RLA commits to the exclusive jurisdiction of the National Mediation Board ("NMB").[1] As a result, each Defendant contends, this court lacks subject matter jurisdiction and dismissal is proper under Federal Rule of Civil Procedure 12(b)(1). In its Motion for Partial Summary Judgment and For Further Relief, GO-245 reiterates that this is not a representational dispute but rather a "minor dispute" subject to the

---

[1] Defendant BNSF makes this argument in the alternative to its contention, consistent with GO-245's position, that this dispute is a minor dispute subject to arbitration before the appropriate RLA adjustment board.

exclusive jurisdiction of an RLA adjustment board, and seeks partial summary judgment compelling GO-009 to participate in arbitration before the appropriate adjustment board and requesting that I hold this case in abeyance until the adjustment board has ruled.

Each Defendant has also asserted other grounds for dismissal as described below.

## II. Discussion

### A.  Standard of Review

Defendants' assertion that this is a representational dispute beyond the jurisdiction of this court goes beyond the allegations contained in the complaint and challenges the facts upon which subject matter depends. In such factual attacks on subject matter jurisdiction, the parties may present and I may consider materials outside of the complaint in deciding the motion to dismiss, without converting it into a motion for summary judgment. *See, e.g., Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Although I may resolve any disputed jurisdictional facts that are not intertwined with the merits of the case, *see Holt*, 46 F.3d at 1003, no such disputed facts exist here. GO-245, as the party invoking the court's jurisdiction, has the burden of establishing that subject matter jurisdiction exists. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974); *Fritz v. Colorado*, 223 F. Supp. 2d 1197, 1199 (D. Colo. 2002).

GO-245 further has the burden of demonstrating there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law in connection with its motion for partial summary judgment. *See* Fed. R. Civ. P. 56(c); *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). As no party has asserted the existence of any disputed facts material to GO-245's motion, the determinative question with respect to this motion is whether GO-245 is correct that the present dispute is a

minor dispute within the jurisdiction of the appropriate RLA adjustment board and that GO-009 can be compelled to participate in arbitration of the dispute before this board.

B.   Nature of the Dispute

The Railway Labor Act identifies three types of labor disputes - major disputes, minor disputes and representational disputes - and provides each with a unique dispute resolution procedure. *See Western Airlines, Inc. v. Int'l Bhd. of Teamsters*, 480 U.S. 1301, 1302-03 (1987); *Int'l Bhd. of Teamsters v. Texas Int'l Airlines, Inc.*, 717 F.2d 157, 158-59 (5th Cir. 1983). The two types of disputes relevant to this case are "minor" and "representational" disputes.

A minor dispute "involve[s] the application or interpretation of an existing collective-bargaining agreement." *Western Airlines*, 480 U.S. at 1302; *see Consol. Rail Corp. ("Conrail") v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 303 (1989); *Ertle v. Continental Airlines, Inc.*, 136 F.3d 690, 693 (10th Cir. 1998). These disputes are resolved through compulsory and binding arbitration before the National Railroad Adjustment Board or an adjustment board established by the employer and the union representing the employees. *See* 45 U.S.C. § 153 First, Second; *Conrail*, 491 U.S. at 303-04; *Rocky Mountain Airways Maint. Ass'n v. Rocky Mountain Airways, Inc.*, 796 F. Supp. 1395, 1396 (D. Colo. 1992). Although courts lack authority to interpret a collective-bargaining agreement and resolve a minor dispute, they may compel arbitration of the minor dispute before the appropriate RLA adjustment board. *Western Airlines*, 480 U.S. at 1302.

A representation dispute under the Act is a disagreement concerning "the composition of the collective bargaining unit and the identity of that unit's authorized representative for collective bargaining purposes." *UTU v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1213 (7th Cir. 1996); *see* 45 U.S.C. 152 Ninth; *Western Airlines*, 480 U.S. at 1302. The RLA vests the National

Mediation Board with exclusive jurisdiction for resolving such disputes. 45 U.S.C. § 152 Ninth; *Western Airlines*, 480 U.S. at 1302; *Gateway*, 78 F.3d at 1213. A complaint alleging a representational dispute is thus subject to dismissal for lack of subject matter jurisdiction. *See Gateway*, 78 F.3d at 1213; *Rocky Mountain Airways Maint. Ass'n*, 796 F. Supp. at 1396. An intra-union dispute as to which union unit represents a bargaining unit can qualify as a representational dispute. *See BLE v. Seaboard Coast Line R.R. Co.*, 413 F.2d 19, 24 (5th Cir. 1969).

Considering this authority and the undisputed facts presented here, I find the parties' disagreement regarding the meaning and application of Article 50 of the Consolidated Yards Scheduling Agreement is a minor dispute subject to resolution before the appropriate RLA adjustment board. There is no disagreement here as to which employees the various parties represent or whether GO-245 represents parties involved in the dispute. Although the Defendants at times attempt to characterize GO-245's complaint as an attempt to establish itself as a representative for former ATSF yardmen and/or engineers at the Consolidated Yards, GO-245 has represented to this court that this is not its intent and that its claim is only for enforcement of Article 50's prior approval provision on behalf of yardmen on the former BN side of the consolidated yards, whom all agree GO-245 represents. *See, e.g.*, Pl.'s Reply to Oppositions to Mot. for Part. Summ. J. at 3 (filed May 31, 2002).[2] Thus, the case turns on

---

[2] GO-245's assertion in some of its briefing to this court that Article 50 granted it "joint jurisdiction" over the Kansas City Consolidated Yards, *see* Pl.'s Opp. to Mots. of Defs. to Dismiss at 16, even though drawn from the language of Article 50 itself, initially confused this issue as the term can be read as an attempt by GO-245 to assert jurisdiction over all UTU-represented employees at the consolidated yards, including former ATSF employees otherwise represented by GO-009. GO-245 in fact acknowledges it took this position in its internal UTU appeal of GO-009's participation in the Flow-Back Agreement, but reports it is not challenging the UTU Board of Director's denial of this contention in this action. Pl.'s Reply to Opps. to Mot.

whether plaintiff correctly asserts that the Flow-Back Agreement "affects" the Consolidated Kansas City Yards within the meaning of Article 50 of the Consolidated Yards Schedule Agreement and whether Article 50 therefore required defendants BNSF and GO-009 to obtain GO-245's approval before they entered into the Flow-Back Agreement. As such, it is a dispute involving the interpretation and application of the Consolidated Yards Schedule Agreement, an existing collective bargaining agreement, which by definition is a minor dispute to be resolved by the appropriate RLA adjustment board. *See Conrail*, 491 U.S. at 303; *see also Bhd. of Locomotive Eng'rs v. Atchison, Topeka & Santa Fe Ry. Co.*, 768 F.2d 914, 919 (7th Cir. 1985) (Posner, J.) ("avalanche of cases" hold that "three-cornered" contract disputes regarding working conditions, *e.g.* disputes between two unions with an employer siding with one union, are minor disputes).

Defendants argue *Division No. 14 Order of Railroad Telegraphers v. Leighty*, 298 F.2d 17 (4th Cir. 1962), is on point and establishes that GO-245's claims present a representation dispute. In *Leighty*, two intermediate "Divisions" in the same union separately represented telegraphers employed by different railroads. When the two railroads merged, the two Divisions could not agree on how to integrate their seniority rosters in a new collective bargaining agreement. *Id.* at 18. The national union authorized its president to resolve the dispute. *Id.* When his efforts failed, the president, "acting for the national order," unilaterally entered into a collective bargaining agreement with the railroad that settled the seniority question.

---

for Part. Summ. J. at 3 & n.1. Rather, GO-245 represents to the court that it "is *not* contending in this litigation that it has a bargainable interest over the impact of [the Flow-Back] Agreement on former ATSF trainmen in the Consolidated Kansas City Yards," but rather a contractual right to be consulted on behalf of the former BN trainmen that it indisputably represents. *Id.* (emphasis in original). I expect GO-245 to honor this representation before the adjustment board that decides this minor dispute.

9

*Id.* One of the Divisions then sued the national president, arguing that the agreement and settlement were invalid and should be set aside because the railroad should have bargained with it rather than the parent union. *Id.* at 19. The Fourth Circuit refused to decide this issue, however, holding that it was an intra-union representational dispute under the exclusive jurisdiction of the National Mediation Board. *Id.*

In so holding, the Fourth Circuit was careful to note that disputes regarding union jurisdiction that "depend for resolution upon an interpretation of existing bargaining agreements" are to be decided by the appropriate railroad adjustment board. *Id.* at 20 n.5. As just described, the dispute in this case, even if characterized as a jurisdictional dispute between GO-245 and GO-009, depends for resolution on the interpretation and application of Article 50 of the collective bargaining agreement entered into by these UTU general committees and BNSF. Consequently, *Leighty* supports my conclusion that the parties' dispute is a minor dispute subject to resolution by an RLA adjustment board rather than a representational dispute to be decided by the NMB. The *Leighty* decision is further distinguished from this case by the lack of assertion here that the national UTU official who assisted in negotiation of the Flow-Back Agreement was acting on behalf of the national order or was otherwise authorized to act for GO-245 in these negotiations.

C.  Other Asserted Bases for Dismissal

UTU and GO-009 also assert this court lacks subject matter jurisdiction because GO-245's complaint is an improper collateral attack on UTU's rejection of GO-245's internal appeal contending that the UTU Constitution required its participation in negotiation of the Flow-Back Agreement. GO-245 does not challenge UTU's resolution of this appeal here, however, and the final decision on this appeal is based, like GO-245's arguments to the union, solely on the UTU

10

Constitution. The UTU decision does not purport to interpret the approval provision of Article 50 of the Consolidated Yards Scheduling Agreement and in fact does not mention it all. Accordingly, even assuming I would lack jurisdiction to decide a collateral attack to UTU's decision, the complaint here does not present that issue.

Defendant BLE also asserts it should be dismissed from this action pursuant to Rule 12(b)(6) because the amended complaint fails to state a claim against it for which relief may be granted. To decide BLE's motion I must "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). In making this assessment, I accept all well-pleaded allegations of the complaint as true and construe them in the light most favorable to Plaintiff. *Id.* Dismissal is only appropriate if it appears GO-245 could prove no set of facts in support of its claim against BLE that would entitle it to relief. *Id.*

BLE is correct that the amended complaint does not allege BLE violated the RLA by entering into the Flow-Back Agreement or assert any other claim against BLE. GO-245 argues BLE is nonetheless a necessary party to this litigation pursuant to Fed. R. Civ. P. 19(a), because the amended complaint seeks to enjoin application of the Flow-Back Agreement to the Kansas City Consolidated Yards, so that the interests of BLE, as a party to that Agreement, will be affected by this litigation. I agree. As an indispensable party, BLE is properly a defendant in this action. *See id.*; *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 356 n.43 (1977); *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1095 (6th Cir. 1974).

In response, BLE does not dispute it is an indispensable party here, but argues it should still be dismissed because the relief GO-245 seeks against BLE, a permanent injunction barring it and the other parties to the Flow-Back Agreement from applying the Agreement to the Kansas

City Consolidated Yards, is barred by the Supreme Court's decision in *General Building Contractors Association, Inc. v. Pennsylvania*, 458 U.S. 375 (1982). In that decision, the Court held that the district court exceeded its equitable powers when it entered an injunction that imposed considerable administrative and financial burdens on a non-liable party. *Id.* at 398-401 At the same time, the Court recognized that a non-liable party may be subjected to "minor and ancillary provisions of an injunctive order" if the district court finds it necessary to grant complete relief to the plaintiff. *Id.* at 399; *see EEOC v. Local 638*, 81 F.3d 1162, 1180 (2nd Cir. 1996). The Supreme Court further stated as relevant here that "[t]o the extent that the remedy properly imposed upon the [liable defendants] requires any adjustment in the collective-bargaining contract between the [non-liable party] and the [defendants], it is entirely appropriate for the District Court to fashion its injunctive remedy to so provide, and to have that remedy run against [the non-liable party] as well as the [defendants]." *Gen. Bldg. Contractors*, 458 U.S. at 400.

The latter statement suggests that an injunction adjusting the Flow-Back Agreement to bar its application to the Kansas City Consolidated Yards, and imposing this injunction on BLE as well as GO-009 and BNSF, would be "minor and ancillary" and well within this court's equitable powers. Whether this preliminary view is correct, however, is a matter to be determined when and if GO-245 prevails in its position before the adjustment board and seeks an order enforcing that award. Until this occurs and BLE demonstrates that the requested injunction imposes more than minor and ancillary burdens on it, there is no basis for dismissing BLE from this action.

D. GO-245's Motion to Compel Arbitration and to Stay

A minor dispute is subject to compulsory and binding arbitration before the appropriate RLA adjustment board. *Conrail*, 491 U.S. at 303; *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 322 (1972). In its motion for partial summary judgment, GO-245 seeks an order compelling GO-009 to participate in such arbitration to resolve their and BNSF's minor dispute regarding the proper interpretation and application of Article 50 of the Consolidated Yards Schedule Agreement. There is no question this court has jurisdiction to compel arbitration of a minor dispute before the appropriate RLA adjustment board. *See Western Airlines*, 480 U.S. at 1302; *Ass'n of Flight Attendants, AFL-CIO v. United Airlines, Inc.*, 71 F.3d 915, 917 (D.C. Cir. 1995). GO-245 further requests that I stay this action pending a ruling by the adjustment board.

GO-009 does not make any argument against its compulsory participation in adjustment board proceedings other than its rejected contention that this is a representational dispute properly directed to the National Mediation Board. It also made no response to GO-245's request that I retain jurisdiction of this action pending adjustment board action in order to enforce the board's award if GO-245 prevails there.

BNSF, as a signatory to the Consolidated Yards Schedule Agreement, has no objection to participating in arbitration of this dispute before an RLA adjustment board, but asserts the proper course if I find a minor dispute to exist is to dismiss GO-245's complaint. No further action in this case is unnecessary, BNSF argues, because the question of GO-009's participation in the adjustment board proceedings can be decided by a "procedural neutral" under Section 3 Second of the Act, 45 U.S.C. § 153 Second, and GO-245 may file a second suit to enforce the arbitration award if needed. GO-245 responds that a judicial order compelling GO-009 to participate in the

13

adjustment board proceedings pursuant to its duties under the RLA[3] is required here to overcome a provision in the Schedule Agreement that gives GO-009 discretion to decline to arbitrate, *see* Consolidated Yards Schedule Agreement, Art. 50, and that retaining jurisdiction would avoid any argument that enforcement of the adjustment board award would be time-barred under the Act. *See* Pl.'s Mot. for Part. Summ. J. at 20 n.5.

To eliminate any question as to GO-009's duty to participate in the arbitration of the dispute between it, GO-245 and BNSF regarding the meaning and application of Article 50 to the Flow-Back Agreement, I grant GO-245's request for an order compelling GO-009 to participate in this arbitration before the adjustment board. I will also stay this action as requested so that any rights revealed by the adjustment board's contract interpretation may be protected if necessary. *See Order of Ry. Conductors v. Pitney*, 326 U.S. 561, 568 (1946) (directing district court to stay dismissal of action involving minor dispute for this purpose).

For the reasons stated above, I DENY the motions to dismiss filed by Defendants UTU and GO-009, BNSF and BLE (Docket Nos. 8, 10, 13) and GRANT Plaintiff GO-245's motion for partial summary judgment (Docket No. 21). I further ORDER Defendant GO-009 to participate in the appropriate RLA adjustment board proceeding to resolve the dispute between it, GO-245 and BNSF regarding the meaning and application of Article 50 of the Consolidated Yards Schedule. Finally, this action is STAYED and ADMINISTRATIVELY CLOSED until such time as the adjustment board has ruled in this dispute or one or more of the parties shows good

---

[3] The Railway Labor Act imposes a duty on carriers and their employees "to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise," 45 U.S.C. § 152 First, and requires employees and carriers to arbitrate a minor dispute before an RLA adjustment board. *Id.* § 153 First (i).

14

cause that this action should be reopened. The parties shall promptly inform this court when the adjustment board issues its decision.

IT IS SO ORDERED.

Dated this 27 day of June, 2005.

                                    /s/ John L. Kane
                                    John L. Kane, Senior District Judge
                                    United States District Court